UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff

v.

JOSHUA BRERETON,

    Defendant.

Case No.: 1:22-cr-00123-PLM

Hon. Paul L. Maloney

---

| MARK A. TOTTEN (P70268) | DONALD H. SMITH (P65339) |
|---|---|
| UNITED STATES ATTORNEY | WILLIS LAW |
| 330 Ionia Avenue NW | Attorney for Defendant |
| PO Box 208 | 491 West South Street |
| Grand Rapids, MI 49503-2549 | Kalamazoo, MI 49007 |
| (616) 456-2404 | (269) 492-1040 |

---



491 WEST SOUTH STREET
KALAMAZOO, MICHIGAN 49007

OFFICE: 269 / 492-1040
616 / 301-7177
TOLL FREE: 800 / 610-6938
FAX: 269 / 492-1042
WWW.WILLIS.LAW

## DEFENDANT'S MEMORANDUM OF SENTENCING

I am writing on behalf of my client, Defendant Joshua Brereton, who submits the following information for the Court to consider for the purposes of sentencing:

### General Information

Mr. Joshua Brereton is a 25-year-old father with no prior criminal history of any kind who pled guilty to Count 1 of the Indictment - Arson. Although he has been in custody since his arrest, he normally resides in Gobles, Michigan with his wife of four years and their children: a three-year-old girl and a one-year-old boy. A family picture is attached as **Exhibit 1**.

Having met with Joshua on many occasions, he is smart and pleasant to deal with. Although one might initially suspect that a situation like this may involve mental illness,

1

there is no indication that Joshua has any problem that impairs his ability to recognize reality or otherwise materially impairs his judgment.

It should also be noted that, although Joshua was a licensed gun owner, all his firearms were purchased and kept legally and played no role in this case at all.

### This Offense

Joshua has repeatedly acknowledged his responsibility for what happened. This offense was committed impulsively after he had heard a church sermon about "making a difference." Not only did Joshua not injure anyone, but he had absolutely no intention of hurting anyone, which is why he had made sure the parking lot was completely empty before doing anything.

Mr. Brereton comes from a conservative Christian background and feels strongly that abortion procedures terminate lives which God has created. This is something that he has believed his entire life, and which was taught to him by his family. His hope when he acted as he did was to interrupt as many abortions as possible and hopefully save children as a result.

When he was making this rash decision, Joshua was not considering the full ramifications of his actions, including the personal risk and financial damage that fire causes to others and the consequences doing something like this would have on his wife, his children, his parents, siblings, etc. Having now taken that opportunity to reflect, Mr. Brereton has now learned about the innumerable consequences and potentialities of doing something like this and absolutely regrets acting as he did.

No one in Joshua's family saw this coming or had any concern that he would do something like this. In speaking with his family members, everyone is bewildered and



491 WEST SOUTH STREET
KALAMAZOO, MICHIGAN 49007

OFFICE: 269 / 492-1040
616 / 301-7177
TOLL FREE: 800 / 610-6938
FAX: 269 / 492-1042
WWW.WILLIS.LAW

devastated. His parents and siblings have asked themselves over and over "why did he do this?", "should we have seen this coming?", "could we have intervened in some way and helped prevent this?" As part of this, they reflect on his past and note that he always struggled with what he should be doing – what his faith and belief system was requiring of him. They also noted that he often ruminated on spiritual issues and took these things very seriously.

In speaking with Joshua myself, it is clear that he very much wants to be a good person and wants to help others. It is also clear from his education and job history that he has not yet found his calling in life. Furthermore, Joshua is very interested in philosophy and attempting to reconcile his morals and beliefs with the realities of the world we live in. It was this struggle, combined with his impulsivity and naivete that played big parts in why he committed this offense.

### Sentencing Guidelines

As the Presentence Investigation Report indicates, the guidelines score out as Criminal History Category I and Offense Level 21. This recommends that, apart from any statutory mandatory minimum sentence, the Court impose a period of incarceration in the range of 37-46 months.

Considering the amateurish nature of Defendant's impulsive actions (i.e. attempting to damage a brick building with tiki torch fuel) and the total lack of criminal history, it seems that the low end of the guidelines or below would be an appropriate sentence, were there not a mandatory minimum.

Willis Law
ATTORNEYS & COUNSELORS

491 WEST SOUTH STREET
KALAMAZOO, MICHIGAN 49007

OFFICE: 269 / 492-1040
616 / 301-7177
TOLL FREE: 800 / 610-6938
FAX: 269 / 492-1042
WWW.WILLIS.LAW

### Factors to be considered

As the court knows, federal law requires the court to look at the whole person when considering how to sentence an individual.

(a) Factors to be considered in imposing a sentence. **The court shall impose a sentence sufficient, but not greater than necessary**, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed--
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
    (3) the kinds of sentences available;
    (4) the kinds of sentence and the sentencing range established for--
        (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
            (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
            (ii) that, except as provided in section 3742(g) [18 USCS § 3742(g)], are in effect on the date the defendant is sentenced; or
        (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);


**Willis Law**
ATTORNEYS & COUNSELORS

491 WEST SOUTH STREET
KALAMAZOO, MICHIGAN 49007

OFFICE: 269 / 492-1040
616 / 301-7177
TOLL FREE: 800 / 610-6938
FAX: 269 / 492-1042
WWW.WILLIS.LAW

>   **(5)** any pertinent policy statement--
>       **(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>       **(B)** that, except as provided in section 3742(g) [18 USCS § 3742(g)], is in effect on the date the defendant is sentenced.[;]
>   **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>   **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C.S. § 3553(a). [Emphasis added.]

With regard to these factors, clearly the two that stand out as important are "**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; **(B)** to afford adequate deterrence to criminal conduct" 18 U.S.C.S. § 3553(a)(2)(A-B). In these circumstances, there is a strong interests in the court fashioning a sentence that "reflects the seriousness of the offense" and that affords "adequate deterrence to criminal conduct" by others. There are also many types of sentences available for an individual like Mr. Brereton, were there not a mandatory minimum sentence required.

However, there is little else that weighs heavily against Mr. Brereton. For instance, there is little chance that he would commit a similar offense in the future. He is also presently very employable. There is a significant amount of restitution owed to the victims, as well, which he will need to pay over time.



491 WEST SOUTH STREET
KALAMAZOO, MICHIGAN 49007

OFFICE: 269 / 492-1040
616 / 301-7177
TOLL FREE: 800 / 610-6938
FAX: 269 / 492-1042
WWW.WILLIS.LAW

### Online Posts

With regard to "the history and characteristics" of Mr. Brereton, other than the sentencing offense, there is nothing bad about the defendant. There has been speculation and innuendo that Joshua was posting things online which were inappropriate or inciteful. This is not true.

Attached as **Exhibit 2,** is a complete transcript of his statements on youtube.com, which have been so heavily quoted as it is the most noteworthy of his sentiments. It should be noted that at the end, Joshua emphasizes the importance of helping the neighbor and showing kindness. He states "[w]e're just there to help. So step out of your comfort zone, lend a hand, change society from the inside out…Look at your next-door neighbors. See if they need help. Then branch out from there, and you'll find you'll change people's lives more directly and immediately, and they will, in turn, go on to do the same. That's how kindness spreads."

As you can see, read in its entirety, only in hindsight, now knowing that Joshua committed the sentencing offense soon after making this statement, can one read in anything other than mainstream pro-life message. In fact, had this event not occurred, no one, other than family and friends, would have paid any attention to his words.

### Letters of Support

Despite being 25 years old, married, and a father of two children, Joshua seems to be a very naïve person. He comes from an intact family and was home-schooled, which likely led to his naïveté. However, he has a lot of positive factors about him. Because of this, many of his friends, family members and peers have submitted letters of support, attesting to the character and integrity of Joshua Brereton.



491 WEST SOUTH STREET
KALAMAZOO, MICHIGAN 49007

OFFICE: 269 / 492-1040
616 / 301-7177
TOLL FREE: 800 / 610-6938
FAX: 269 / 492-1042
WWW.WILLIS.LAW

Attached as **Exhibit 3**, please find a letter of support from Mrs. Sarah Brereton, Mr. Brereton's wife. Sarah and Joshua have been together for 5 years. Sarah has witnessed Joshua perform many acts of kindness without hesitation and without expecting anything back in return. Sarah knew Joshua was the one after witnessing the love he had for his family and his caring for others. He has gone above and beyond for his family to make sure she and their two children never go without.

Ms. Lenore Orozco has known Mr. Brereton for a majority of his life, meeting him when he was only in grade school at their church and speaking with him weekly. Ms. Orozco articulates that Mr. Brereton is a respectful individual within the community and even an inspiration to the school aged children. **(See Exhibit 4).**

Ms. Mary Beth Sons submitted a letter on behalf of Mr. Brereton. Ms. Sons describes Joshua as a compassionate, selfless individual whom she could always rely on. She believes that Josh truly just wants to make the world a better place and will use this incident as a learning lesson and will use it to help others learn from the choices that he made. **(See Exhibit 5).**

Ms. Karen Miko has known Joshua for many years through Boy Scouts, home-schooling, and St. Vincent De Paul. Ms. Miko describes Joshua as a mature individual with a very generous spirit. She states that Joshua is always the first to volunteer his time at the community food pantry and is always willing to lend a helping hand. **(See Exhibit 6)**

Rev. Fr. Thomas R. Held and Mr. Brereton met while Mr. Brereton was attending Central Michigan University. Reverend Held recalls Joshua being a kind-hearted person with an important place in society. **(See Exhibit 7)**

Willis Law
ATTORNEYS & COUNSELORS

491 WEST SOUTH STREET
KALAMAZOO, MICHIGAN 49007
OFFICE: 269 / 492-1040
616 / 301-7177
TOLL FREE: 800 / 610-6938
FAX: 269 / 492-1042
WWW.WILLIS.LAW

Mr. Paul Van Schoyck met Joshua when he was a teenager when he enrolled in a martial arts program through his business, Chung's Martial Arts Academy, where Joshua eventually was offered an assistant instructor position by Mr. Van Schoyck. Mr. Van Schoyck recalls Joshua being a hardworking and empowering individual and admired his dedication and the care he displayed in wanting to help others stay safe. **(See Exhibit 8)**

Former Boy Scout Master, Rick Schultz, describes Joshua as being a man of integrity, honesty and strong values. He states that Joshua is "one of the most outstanding young individuals I have ever had the pleasure of knowing." **(See Exhibit 9)**

Joshua's Godparents, Dr. Anthony Garofola and Mrs. Debra Garofolo, describe Joshua as being a dedicated husband and father, a faithful Roman Catholic, and a very intelligent person. They describe a Boy Scout project that Joshua led which included planning, designing, and fundraising to restructure the workspace at the St. Vincent DePaul store, something that was important and beneficial to the community. **(See Exhibit 10)**

Sean Morgan, a peer of Mr. Brereton describes Joshua of being responsible, caring, and thoughtful. He states that Joshua does not have malice or hatred in his heart. Mr. Morgan states that Joshua was the one that everyone relied on to lead by example, and contributed to their Boy Scout troop feeling inclusive and accepting. **(See Exhibit 11)**

A friend of Joshua, Jonathan Forrest, describes Mr. Brereton as a thoughtful, charitable, strong person. He encourages anyone to stand up for themselves and has helped give confidence to those that are lacking. He states that Joshua has unconditional love for his family and believes that we need more men like him in the world. **(See Exhibit 12)**

Willis Law
ATTORNEYS & COUNSELORS

491 WEST SOUTH STREET
KALAMAZOO, MICHIGAN 49007

OFFICE: 269 / 492-1040
616 / 301-7177
TOLL FREE: 800 / 610-6938
FAX: 269 / 492-1042
WWW.WILLIS.LAW

Former employer and long-time acquaintance, Steven Starbuck, describes Mr. Brereton as a good character, a respectful person, and an attentive family member. **(See Exhibit 13)**

Josh Barr, the Committee Chairman for the Gobles Boy Scouts of America Troop 171, has submitted a character letter on behalf of Mr. Brereton. Mr. Barr had the opportunity to work with and get to know Mr. Brereton and believes that Josh is a hardworking, honest individual as well as a positive influence to the community. **(See Exhibit 14).**

Lastly, Joshua's parents, Mr. and Mrs. Brereton describe Joshua's character as motivated and goal oriented. Joshua's faith and community involvement was always important to him. He will do anything he can when it comes to helping someone in need out and is always volunteering where he is needed. He was an academic scholar in school, and was always dedicated to any extra curricular activity that he participated in. **(See Exhibit 15)**

Josh was just short of becoming an Eagle Scout, having completed more than 21 merit badges **(See Exhibit 16)** and even organized a renovation project for the St. Vincent de Paul Thrift Store **(See Exhibit 17)**. Mr. Brereton has also received his brown belt in Tae Kwon Do as well as numerous awards and medals from past martial arts competitions **(See Exhibit 18)**. Mr. Brereton has received many certifications, including but not limited to his FEMA Certification **(Exhibit 19)**, EMT certification **(Exhibit 20)**, CPR certification **(Exhibit 21)**, and AED certification. He exceled academically through his homeschool program **(See Exhibit 22)** and made the Dean's List during his year at Kalamazoo Valley Community College **(See Exhibit 23)** and his year at Central Michigan

Willis Law
ATTORNEYS & COUNSELORS

491 WEST SOUTH STREET
KALAMAZOO, MICHIGAN 49007

OFFICE: 269 / 492-1040
616 / 301-7177
TOLL FREE: 800 / 610-6938
FAX: 269 / 492-1042
WWW.WILLIS.LAW

University **(See Exhibit 24 & Exhibit 25)**. Mr. Brereton was nominated to attend the International Scholar Laureate Program with the National Society of Collegiate Scholars during his time at Central Michigan University **(See Exhibit 26)** and was even selected to travel as a member of the Delegation on International Relations and Diplomacy based on his leadership skills and academic performance **(See Exhibit 27)**. Mr. Brereton ultimately decided to leave college and seek employment to better provide to his family. **(See Exhibit 28)**

### Conclusion

Joshua Brereton was a confused young man when he committed this offense. Over time, he struggled more and more with what he felt was his calling to help others. For whatever reason, he became increasingly compelled to do something more than what he was doing. At the same time, this compulsion became intertwined with his personal beliefs about the abortion issue. As a result, he came to a point where he decided that he had to do something about what he had himself convinced was a "genocide of babies."

Unfortunately, rather than either committing himself to established prolife causes or seeking counsel about what he could do to express his desire to get involved, he did not reach out. Instead, on this fateful day, he became emboldened by some inspiring words that he recently heard and decided on his own that this situation was so bad that he needed to something about it and needed to do it right then.

Without thinking through the seriousness of his actions to individuals who frequent the Planned Parenthood building, potential first responders, society as whole, his family or himself, he took to interrupt as many abortions procedures as possible by damaging the building in question.



491 WEST SOUTH STREET
KALAMAZOO, MICHIGAN 49007

OFFICE: 269 / 492-1040
616 / 301-7177
TOLL FREE: 800 / 610-6938
FAX: 269 / 492-1042
WWW.WILLIS.LAW

In retrospect, Joshua looks at himself everyday with great regret and wonders how he got so confused as to do something like this to land him and his family in such a predicament. At the same time, Joshua is trying to be productive by studying the Bible. He is very thankful that he did not hurt anyone, as he now realizes that he could very well have done so, even though he intended the opposite.

Going forward, Joshua's priority will be providing for his family, who badly need him and will have missed him terribly while he serves his sentence. Due in part to the time he has already spent incarcerated, Joshua has already learned many things from what he did and he will never do anything like that again.

Joshua knows that the offense that he committed for carries a heavy 5-year mandatory minimum sentence. He accepts responsibility for his actions and asks the Court to impose that sentence. At the same time, he asks the court to impose no further imprisonment beyond that. This period is much longer than would otherwise be recommended by the Sentencing Guidelines. Further, it is a sufficient sentence, based on all the circumstances here.

Thank you for considering this information submitted on behalf of Joshua Brereton.

Respectfully Submitted,
WILLIS LAW

Donald H. Smith

Willis Law
ATTORNEYS & COUNSELORS

491 WEST SOUTH STREET
KALAMAZOO, MICHIGAN 49007
OFFICE: 269 / 492-1040
616 / 301-7177
TOLL FREE: 800 / 610-6938
FAX: 269 / 492-1042
WWW.WILLIS.LAW